IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JAMES B. CLARKSON<br><br>Defendant. | Case No. 11-20133-CM |

FILED IN OPEN COURT
9-29-15
TIMOTHY M. O'BRIEN, CLERK
BY ~~Saral Spegal~~
DEPUTY CLERK

PLEA AGREEMENT PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 11(c)(1)(C)

The United States of America, by and through Assistant United States Attorney, D. Christopher Oakley, and James B. Clarkson the defendant, personally and by and through his counsel, Shazzie Naseem, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count One of the Superseding Indictment charging a violation of 18 U.S.C. § 1349, that is, Conspiracy to Commit Bank Fraud.. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count One of the Indictment to which he has agreed to plead guilty is not more than 30 years of imprisonment, a $1 million fine, 5 years of supervised release, and a $100 mandatory special assessment.

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

> The defendant, James B. Clarkson, was a mortgage broker and helped clients apply for and receive real estate loans. Co-defendants David Drake and Donald Snider were business partners in various construction related projects, including projects in Denver,

1

Colorado and Branson, Missouri. In 2006, Drake and Snider purchased Tract 34 of the Indian Ridge Resort project in Branson, under their company, Northshore Investments, for approximately $3million. Drake and Snider intended to develop the property, which was located close to Table Rock Lake, by constructing town homes intended to be used primarily as vacation properties, under the company name of Western Site Services, (WSS).

Drake and Snider entered into an arrangement with My Investing Place Inc. (MIP), and the defendant, Brent Clarkson, to advertise and obtain investors for the Indian Ridge Project. WSS paid MIP $5,000 per loan, and paid Clarkson as well. MIP began soliciting "investors" throughout the Salt Lake City, Utah area to purchase lots in Tract 34.

Defendant Clarkson, as the mortgage broker, made false statements in loan applications he submitted to the banks on the behalf of borrowers. He inflated borrowers' income to make it appear they had more assets. In an email to one borrower, Clarkson said, "On the loan application I stated that you make $21,000 per month, which is to cover all debt and make the ratios work. This is a true stated income loan." On another loan application, Clarkson inflated a borrower's income by $12,500 per month. The borrower corrected the income on the loan application, but Clarkson changed it back on the application submitted to the bank. During an interview with agents, Clarkson admitted to inflating borrowers' income to make sure they qualified for the loans.

Drake and Snider utilized this credit-partner investment strategy to obtain 51 construction loans for the IRR Project. These loans were obtained in the name of the individuals who acted as the credit-partner investor. Twenty-eight of these loans were held by the former Columbian Bank and Trust of Overland Park, Kansas, (CBT). CBT failed on August 22, 2008. The remaining 23 loans were issued by Wells Fargo Bank, (sixteen loans), and Lawrence Bank (seven).

Drake and Snider, under Western Site Services, (WSS), and Tri-Global Development LLC, (Tri-Global), requested and received the majority of the funding available on these 51 loans. The loan agreements required the construction expenses actually be incurred and paid for prior to seeking reimbursement from the loans. This was not the case because the construction activity sufficient to justify the funding did not occur. Construction on some of the town homes for the IRR Project began in early 2007. However, only thirteen of the town home construction projects were started, and none were completed.

In order to obtain the construction loan proceeds, false invoices were submitted by Drake and Snider to the banks asking for WSS reimbursement for work not completed and for excessive reimbursements. These draws were then deposited into the WSS bank account by co-defendant Gibbs, who then transferred the majority of the fraud proceeds back to the WSS operating account. These funds were used for personal and business expenses, mostly in conjunction with a WSS construction project in Colorado (which was funded by a Colorado bank that failed, in part caused by the bad loans to WSS).
In addition, as part of the fraud, Drake and Snider submitted invoices to Columbia from Colorado Modular Home Finders, (CMH). CMH is solely owned by defendant Hall.

The invoices were purported to be for modular construction; however, no modular construction was used on the IRR Project.

An appraisal of the IRR Project was ordered by the FDIC through an independent contractor and the valuation of the project was determined to be $0 because of the unfinished state of the project and because of the damage caused by erosion and water. The actual loss to the three financial institutions is estimated to be over $14 million.

During February through April 2007, Columbian Bank and Trust issued WSS and CMH $2,340,165 in loan proceeds. These monies were deposited and moved between six different accounts. Analyses of the proceeds show $95,250.93 was expended on actual expenses related to the IRR Project. Other uses of the funds included: $1,097,716 for their Colorado construction projects, (including $202,702.69 to New Frontier Bank for past debts), and $77,000 for fees paid to defendant Clarkson.

3.    **Proposed (c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case:

(a)    Two years of imprisonment;

(b)    3 years of supervised release with the specific condition that the defendant be place on house arrest for a period of one year along with any other conditions ordered by the Court;

(c)    no fine;

(d)    the mandatory special assessment of $100;

(e)    Restitution for all counts of the Superseding Indictment, including any dismissed count.

The parties seek this binding Plea Agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this Plea

Agreement. This Plea Agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4.  **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines. Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.  **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees to dismiss the remaining counts of the Superseding Indictment and Indictment at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Superseding Indictment.

6.  **Consequences for Violating Plea Agreement.** The United States' obligations under this Plea Agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in

additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, this Plea Agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 401, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

7. **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed Plea Agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding Plea Agreement as an appropriate disposition of the case.

8. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** On the other hand, if the Court agrees to be bound by the proposed Plea Agreement and accepts the defendant's guilty plea, the defendant will not be permitted to withdraw his guilty plea. Only if the Court rejects the proposed Plea Agreement will the defendant be permitted to withdraw his guilty plea.

9. **Identification of Assets & Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments, and Forfeiture:** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

(a) He agrees to provide a financial statement on a form approved by the United States Attorney's Office that discloses all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within three years preceding the entry of this Plea Agreement.

(b) He agrees to submit to an examination, prior to and/or after sentencing, which may be taken under oath, and which may include a polygraph examination.

(c) He acknowledges that any waivers, consents, or releases he signed for purposes of the Presentence Report extend to the United States Attorney's Office.

(d) He agrees to not encumber, transfer, or dispose of any monies, property, or assets under his custody or control, without written approval from the United States Attorney's Office.

(e) He understands and agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), these monetary penalties will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, he understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If he is incarcerated, he agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(f) If he posted funds as security for his appearance in this case, he authorizes the Court to release the funds and apply them to satisfy his financial obligations, pursuant to the Court's judgment.

(g) He waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment the Court announces on the record the day of sentencing.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special

6

assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

11.     **Waiver of Appeal and Collateral Attack.**  The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release.  The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed.  By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C).  The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C).  However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12.     **FOIA and Privacy Act Waiver.**  The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of

7

the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only him and the United States Attorney's for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement

supersedes any and all other agreements or negotiations between the parties, and that this Plea Agreement embodies each and every term of the agreement between the parties.

16. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

_____    Date: 9/28/15
D. Christopher Oakley
Assistant United States Attorney

_____    Date: 9/28/15
Kim I. Martin
Criminal Chief/Supervisor

_____    Date: 9/29/15
James B. Clarkson
Defendant

_____    Date: 9/29/15
Shazzie Naseem
Berkowitz, Oliver, Williams, Shaw & Eisenbrandt
Counsel for Defendant

9